Good morning and may it please the court. My name is Nick Brestov. I'm counsel for the appellants and I was the trial counsel in the court below. Very good. This is Miss Field. All right. All right. Very good. Would you then start his time back over? Thank you. I do have a quick question before we start. When it goes to the yellow light, how many minutes do I have left? Well, you're you should have knowledge that you started with 20 and it'll take off as it goes. And so if you want to hold some rebuttal time, you look at that once in a while and say, I'd like the rest for rebuttal. Well, I want to go straight to the pivotal issue here, because I think the facts are and the law are pretty clear. Were the facts at trial so clear that Judge Klausner could grant judgment as a matter of law and take the case from the jury after all the evidence was in? We had stipulated jury instructions and we were about to argue the case when an oral JMOL motion was made and then granted and then followed up by written findings of fact and conclusions of law pursuant to Rule 52 as if this had been a court trial. It seems that looking at the evidence objectively, the answer has to be no on JMOL. The judge should have looked at the case from the perspective of the plaintiffs with reasonable inferences to the plaintiffs, not weighed the evidence and let the case go to the jury, because with respect to qualified immunity and probable cause, the evidence was actually pretty clear that, objectively speaking, and maybe you will get to this point on your de novo review, that no reasonable jury could have found qualified immunity or probable cause. They were lacking. Well, but the reasonable jury wouldn't have been asked to find qualified immunity. They'd have only been asked to find facts upon which the judge would then determine the qualified immunity. Qualified immunity is a question of law, isn't it? I'm afraid I have to disagree with you. Well, that's good. You can go ahead. I know that you're the author of Sloman v. Tadlock, where if qualified immunity were to be an issue of law, it's because there are no disputed facts. The issue could have been raised to the district court on summary judgment, and it wasn't. The Monell issue was raised on summary judgment with the statement that, by the city, we aren't going to ask for summary judgment on the false arrest 1983 case because there are issues of disputed fact. And by the time we get to the point of having a trial, qualified immunity is a defense, according to Sloman v. Tadlock, this court. Well, my question was asked in a manner such that it was trying to best put out the argument that has been advanced by the defendants, and so I wanted you to address that particular question because I think that's a question we have to decide. Well, in this case, I think the question should be decided in favor of the plaintiffs, so that, for example, under the recent case of Edgerly, you could conclude as a matter of law that the officers were not entitled to qualified immunity because the what happened would clearly contravene both the Fourth Amendment and the Devereaux case where this Court said, in effect, I know it when I see it, you can't manufacture evidence. There may be no constitutional provision that says that, but Devereaux certainly did, and Devereaux is in the books. The manufactured evidence here is not so much that the arrest report contained a false statement, and I want to point out not that it's inconsistent with the person who was arrested. It's inconsistent with the eyewitness. The eyewitness said when viewing the arrest report statement that Diana had identified this Torres as positively, that that statement was false, but that's not the manufactured part of this. The manufactured evidence part of this begins with the way the six-pack was assembled and the weight descriptor was dropped by Detective Hickman, who knew that there was no criminal history for Mr. Torres, having checked four databases and then the Cal Gangs database and then the card file at the station, finding nothing with respect to him at all, with Detective Park knowing that there was no physical connection of Torres to the car, Detective Park had been in charge of taking fingerprints, and he could have gotten fingerprints from Torres, didn't ask for it, the fingerprints did show a connection to the driver who Diana had identified, but that line of investigation wasn't pursued, and then when Detective Roberts and Detective Park go and see Diana with the six-pack, they begin with the following line of questioning, and that line of questioning is, we think we've found the chubby guy, the other guy in the car, who was only previously described generically, a 15 to 16-year-old male Hispanic who was very overweight, and then some clothing, and that's when the, so it might have been, it might have tainted the process to say to Diana, we think we're looking, we want you to pick out the chubby guy. Really, if you look at the exhibit, you'll see two faces that are very round and very chubby, but the other four are not, because of the weight descriptor being dropped. You have to just look at that. But the admonition said pick out the person who committed the crime. She is there for five to ten minutes, and it's clear in the record more than once, not saying anything, and that right there should have alerted the detectives that there's a real problem here with respect to this eyewitness. There are a number of issues with respect to the reliability factors under Hannigan. Almost all of them, I mean, not almost, all of them are either low or lacking. In this case, after the five minutes, he changes the question, and he says, I see you're staring at someone in particular. Who are you staring at? And that's when she points to number six, Torres. Well, saying that's him then gets twisted and taken out of context, so that he presents it later after the interview process to the detective who's waiting in the car, Detective Raines, as being a positive ID. And when she said that's him, she was answering the question, who are you staring at, not who committed the crime. Immediately after that, he asked her to write what she thought, and she wrote, I have this burned down to my retinas, I circled the person in number six because he looks more likely to the other guy in the car. Maybe not the best language, but she testified at trial, I circled number six because he looked more like the other guy, not is the other guy. But that got turned into a positive identification when Detective Roberts and Detective Park told Detective Raines about it, the person who was least involved in the investigation, who writes the arrest report saying she positively identified him, and that's what goes to the district attorney. In the context of no physical evidence, no criminal history, and then you have this group photo. The group photo was taken at school, and it showed Torres in the group of six with the driver, and in the arrest report it says that he was flashing gang signs, and you can see about that much, maybe a half an inch of one finger of Raymond Torres, or otherwise has his hands down. Even the defense detective expert said you can't see Raymond Torres flashing a gang sign in that group photo, which they got from school authorities. So there was another instance of not having a fair probability that Raymond Torres was involved in this gang murder. I mean, that's how serious it was. He was flashing a gang sign in a group of six, with no physical evidence, having a teacher take a picture at school with some other people who may have been in a gang, but there's nothing to say that he was. And yet another twist was that school officer Steinberg, who said, you know, that generic description, the one that even Detective Roberts said wasn't enough to go anywhere with, 15- to 16-year-old boy with a gun, was male, Hispanic, very overweight. When he added to that, recently shaved his head, maybe he's dressing differently, and he's going to lunch with these other guys, what was written down was he'd been jumped into the gang recently. But at trial, even school officer Steinberg said, no, I didn't say that he'd been jumped into the gang. Detective Park said that he had no basis for believing that Raymond Torres was involved in the gang. And as I mentioned before, under the recent case of Lopez, which I cited in the Rule 28-J letter that I submitted, you can't ignore the contraindications here. And when they did go and arrest him, immediately after the session with Diana, without doing any other investigation, he just took him to the station and then to jail. And there he sat for five and a half months. Let me ask you a question which is a little bit off of where we are right now. I want to talk about the evidentiary ruling regarding the expert witnesses. As I understand the rule, if the witness is one retained or specifically employed to provide expert testimony, or one whose duties regularly involve giving expert testimony, they need not supply a written opinion. Now, as I understood the record, Peters testified or at least came forward to suggest that he is regularly employed to give the expert testimony. But I did not see anything in this record about Giroud. And therefore, I'm wondering why he had to give an opinion. Because he was not precipitant to anything. He was not precipitant to any of the events. He was not an investigating officer. Well, that doesn't have anything to do with the rule, whether he's there or not. If he's an employee of the police department and he is not specifically employed to provide expert testimony, or not one whose duty is to regularly give such testimony, he can be just a regular officer who does things on a regular basis and not give an opinion. Well, I have two answers to that. First, I think he is regularly employed to give... Is that in the record? I couldn't find it. And I don't know that I can point you to it. But what I can say about the purpose of the rule is that when an expert report is submitted, there is a need for deposing that person, because you have a report, or potentially using the report for cross-examination purposes and or for the use in deposition. I understand the reasoning, and I even understand that with a normal medical treating physician, that's one of the reasons it was adopted, this rule, is not to provide, not to make them give a report. When they're only a treating physician. That is correct. But they may give opinions. So that's why I asked the question. Let me ask you another question. It seems to me that if one goes to the fact, one gets to the fact that the probable cause was not here, and therefore there was not probable cause for the rest. As to the qualified immunity, my second question is, was the right clearly established such that it would be clear to a reasonable officer that the conduct was unlawful in the situation he confronted? I take all the officers. You've got one officer who was given the idea of what happened in there. He wasn't in the identification situation. He was only listened to what he was told about that, and or saw the particular situation. I look at the other officers as to what they knew and what they didn't know, and I guess I'm, I guess to some extent worried, simply because, if I read Kennedy versus the city of Ridgefield, I see Hunter versus Bryant, I see even law enforcement officials who reasonably, but mistakenly, conclude that probable cause is present, are entitled to immunity. Moreover, because the entitlement is in an immunity from suit rather than a mere defense to liability, in Hunter, the Supreme Court held that Secret Service agents were entitled to qualified immunity if a reasonable officer could have believed. And so I want you to address that issue. Well, objectively, no reasonable officer would go against the admonition procedure, change the question, ask who are the people who are entitled to qualified immunity, and then go back to the question, who are you staring at, and then twist that's him into that's the person who was in the car, that's who was the other guy. No reasonable person would do that, because, and then to say to Detective Raines, who was in the car, she ID'd him. That's the record. That's false testimony by Detective Roberts that does get picked up and used by detectives. At least the question of fact as to that is what you're suggesting. Not something one could suggest on a motion for a directed verdict. Certainly true with respect to the JMOL motion, but what I'm saying is no reasonable person, no reasonable officer with education and training for years, would point the finger at somebody after distorting what the eyewitness said, and the reason I say it's so clear is because when Diana saw what the arrest report said, she ID'd him. She said that's false. So there was no other way to put Raymond into the car that had no other evidence other than the fact that he was the person who was in the car. He and the driver went to the same high school and were in one picture together. Let me ask this. Even if there were probable cause to put him in the car, is that enough to arrest him for murder? That's certainly debatable, because she had identified the shooter. She'd never seen the shooter before, or the other two guys, the two guys in the back seat that we came to know about. The most that could be said of the other person in the back seat was that he was there. And the other evidence was, for Diana, that when the shooter pulled out a gun and shot across the way and killed somebody in the other car, it was a surprise. Nobody knew that he had a gun. It would be speculation to say that the person riding next to him, who did nothing other than be there and maybe yell something or say something, and I'm not saying it was Raymond, but that person, if there was probable cause, why arrest that person for murder and gang murder? It's hard to make that leap. He wasn't the shooter. That person had been identified. I would like to reserve some time, so if I may. Good morning, Your Honors. In my mind, I don't think that the issue of probable cause to believe that Raymond Torres was the third suspect in the car was even a close call. I think that on the undisputed facts, there's more than a fair probability that he was the third suspect in the car. And I have yet to hear counsel make an argument, considering the facts in their totality, as to why there wasn't probable cause to believe this. Well, is that enough? That he was in the car? Well, I heard Your Honor's question to counsel, and my response to that is, this case was always presented. It was pled as a question of whether there was probable cause to believe he was the third suspect in the car. It was never questioned whether there was probable cause to believe he could be arrested for murder. Now, my understanding in reviewing the criminal record was the theory he was charged under was one of provocation. It was a provocative act, murder, that by getting in a car with a bunch of gang members and going into rival gang territory and throwing gang signs at rival gang members, that this conduct provoked what ultimately led to this murder. But there was no, as I read the record, there's no evidence that he made a gang sign. I believe the evidence from Diana, the young woman in the car, was that they were all flashing gang signs. But again, Your Honor, I would argue that the plaintiff is bound by his pleadings, and his theory of 1983 liability in this case was they couldn't place him in the car. He never challenged, he never made the assuming arguendo, they can place me in the car, there's no evidence to support probable cause to arrest me for this murder. That was never an issue in this case, and I think he's bound by those pleadings, and I think that's an issue that's not before this Court. What is the standard of review for us on this motion? De novo. Well, but what do we look at? I mean, we have a motion for a directed verdict, don't we? We have a motion for a directed verdict asserting that qualified immunity. Okay, and you've got a directed verdict as to whether there's a constitutional violation in the first place, and as to whether there's immunity in the second place. Isn't that correct? That's correct. And as to that motion, what facts do I look at to determine whether the district court made a fair determination? Do I look at all facts, or do I look at the facts in a light most favorable to the plaintiff? You look at the undisputed material facts, and if there are facts that are in dispute, and my contention is that there are no material facts, and dispute, but if there are material facts in dispute, you resolve them in the plaintiff's favor. Okay, so I, in fact, look at all the facts in a light most favorable to the plaintiff. If they're undisputed, it's still in his favor, because there's nothing left to look. What facts would you go to, or are you coming to us to suggest would give the probable cause in this case? Taken in a light most favorable to the plaintiff, that's the question, because you made a few admissions along the way, suggesting that you weren't even going to move for these motions that you now seek to uphold. I'd like to address that. Suggesting that there was not enough evidence to do it. And then the judge does it on his own, on a motion for directed verdict. I won't say on his own, but you didn't make these motions in the first place. In fact, you only made it on the city's liability, really. Well, you made it on a Monell motion, but I'm just looking at what we've got here. So how in the devil do you come to us and say the facts are so outstanding that we can make it on a motion for a directed verdict? That was a big question to me. I'd like to answer that, Your Honor. I can't change the record of what a young attorney in our office said in a motion for summary judgment on the Monell liability. However, I think her statement was an error, that the material facts were in dispute. And I think it's a statement by an attorney, not a statement of fact, but rather an erroneous conclusion of law that is not binding on the city or the individual officers. I think that counsel for plaintiff has cited no case that would suggest this is a binding judicial admission on the part of the city. It was a statement made in error. Regrettably, I wish she hadn't made it. But this is a de novo review. It's not up to the deputy city attorney to decide if there are material facts in dispute. That's an issue of law for this court. The record is what it is, and my position is... And so are down to the facts. Okay, and I would like to discuss those facts that I believe just clearly and unequivocally support probable cause in this case. I don't even think this falls into a gray area. I don't see how any reasonable officer could have concluded anything else other than that there was a fair probability that Raymond Torres was, in fact, the third suspect in the car. Diana, who spent two to three hours of daylight time with this third suspect in a car, was unwavering in her physical description of him. She described him as a 15 to 16-year-old Hispanic male that was chubby with a dark complexion. What does Raymond Torres look like? He meets that description to a T. Now, I understand this is a generalized physical description, but that's not all the officers relied on here. They had a lot more information. Diana also told them that this third suspect was friends with Johnny. Officer Steinberg, the school police officer, was able to provide evidence that, in fact, Torres was friends with Johnny. He said they ate lunch together every day, they hung out together a lot. So we're getting more. We're connecting him up with this incident. But we don't just have the word of Officer Steinberg, the school police officer. We have the photograph from school corroborating that Torres is friends with Johnny. Well, that school picture was not taken of a gang. It was taken of some musical event, is that correct? Well, that's correct, Your Honor, I assume. But I don't think that changes it. It shows an association between these people. It shows that even though the context was different. It shows that they were in the same school and that they were in the same musical group. And, yeah, they hung out together. Well, that picture doesn't show that. I think the picture in tandem with the school police officer's statement that they ate lunch together every day, or often, and hung out together, does establish it. It supports Diana's description of the third suspect, his physical description, his being a friend of the driver of the car. And she also said that they were all Canoga Park gang members. And the school police officer confirmed that they were. And here's a group of people associating together. It's not probable cause based on the fact that he's affiliated with the gang. It's probable cause based on the fact he's affiliated with the gang the eyewitness affiliated him with. And what else? Oh, the photo array. So, you know, he matches the physical description. We've got to that. He's associated with a kid. So now we have a chubby kid who has a certain skin color and he's a friend of the guy. What else? And he's associated with the gang that's involved in this gang-to-gang shooting. But honestly, whether he's associated with them on a gang-to-gang shooting is subject to some dispute based on what the officers have been told. I think we move on to the six packs then. And Diana stares at it for a while. She doesn't, you know, there are six people that look similar. But who does she zero in on? She zeroes in on Torres. And does she say he's it? Initially she does. The officer says, who are you staring at, Diana? And she says, that's him. But that is not the benefit of the doubt to the plaintiff as to facts. The benefit of the doubt as to plaintiff as to facts, this young man looks most like him. That's the best I can say. I wouldn't disagree with that, Your Honor. And that's probable cause? What other? The others that we've talked about here today? Yeah. Okay. Why didn't you go to a judge and get a warrant then? I don't think that was an issue that was raised in the plaintiff's case. I'm sure it wasn't, but that's in fact something we have to look at in the totality of what happens here. We have to think about, is this probable cause? Is there enough? Is this? And now we have to look at the facts and the light most favorable to the plaintiff. I think because this was a warrantless arrest, we would have to develop facts on whether it fell within one of the exceptions to the warrant requirement. I can only speculate what the officers would say on that, because this isn't an issue that was pursued below at all, because it wasn't raised by plaintiff. But perhaps they would say we just got this identification or tentative identification for Diana. People are retaliated against. People skip town. We need to get him. Maybe they would have justified it by an exigency. I don't know. Let's move to immunity. Given our case law on immunity, and I saw one of those who was very familiar with the case law, even kind of come out of her chair at me and my question to the plaintiff's counsel, because she was saying that isn't our case law, which I was trying to articulate as best I could your brief on it. I think post Saussure v. Katz, it's absolutely clear that qualified immunity is a question of law for the court to decide. I've certainly argued many qualified immunity cases before this court, and I respectfully disagree with Judge Fletcher, but I think that post Saussure is clear. What do you do with our cases which say that it's not appropriate to have some way of judgment on qualified immunity because they're factual disputes? What do you do with those cases? I think that there are situations where the factual dispute is significant enough to preclude qualified immunity, and I was trying to think of some examples of cases that we've dealt with in our office. I mean, I think if it's an excessive force case and the officer's testimony is that the plaintiff was threatening me with a gun, I feared for my life, and that's why I fired in self-defense, and the plaintiff's testimony is, this guy's a liar, I didn't have a gun, I was being totally complacent, then you have a fact that they have to decide, because on plaintiff's version, obviously it's excessive force, but if you believe the officers, then the shooting is justified. Well, we have black-letter law that says if there are disputed facts, you can't get qualified immunity on summary judgment. And they don't parse it out as to, well, this is outrageous, this is less so. It's a question of disputed facts. So what you have to prove to us is that there are no material disputed facts here. I mean, let me – I would like you to answer. I don't mean to interrupt my associate counsel, or my associate judge here. All I'm saying to you, on a summary judgment decision, if I were to take this on summary judgment, the only way I can get to qualified immunity in any question-of-facts situation is to give every benefit of doubt, again, to the plaintiff as to all facts. Now, on a motion for a directed verdict, which is a summary judgment decision to some extent, again, the judge can't weigh evidence. He can't say, I believe this guy or I don't believe – he's got to, again, go all the way to the other side if he's going to make it under any of our case law and suggest that all the facts are in the matter of the plaintiff. And at that point, can I say there's qualified immunity? That's my worry, because as I go through those facts, all to the benefit of the plaintiff, then can I give qualified immunity? Because I can't say that the officer then was reasonable in suggesting that it wasn't an I.D. I can't say that, that it was an I.D. I've got to say there was no I.D. That all she said was, he looks as best he can like the kid in the car. I can't go to the facts that would go so much as to allow officers, then given the state of the law, to apply then what they did in that situation to give them the qualified immunity. That's what I'm asking you to think about, because if this were a summary judgment, we would be doing the same thing. But a motion for a directed verdict doesn't change the standard. I agree with you, Your Honor. If we had a verdict, and then he makes a decision based on the verdict, there's a lot of things to be done. And they might be already done, as the good judge has told you, because the jury would have decided it. But that's why I'm trying to have you think of the different possibilities here and respond, because that's what we have to do in this situation. My understanding of the facts plaintiff claims are in dispute are, was Raymond Torres flashing a gang sign in that group photo, and did Diana positively identify him in the six-pack? I think you have to resolve those facts in the plaintiff's favor and say, okay, he wasn't flashing a gang sign in the group photo, and her identification was not a positive identification, but rather was a tentative identification. And then you have to take those resolved facts in the plaintiff's favor and consider them with all the undisputed facts, the ones we've already talked about, and ask if they add up to probable cause. If the answer is yes, we're done. If the answer is no, then you go on to the next step of the qualified immunity analysis and ask what a reasonable officer. What we have to say is could a reasonable juror on the facts taken most favorably to the plaintiff have found that there was a lack of probable cause and that the officers should have a reasonable, not these particular officers necessarily, but a reasonable objective officer would have thought there was probable cause? Well, again, Your Honor, in a qualified immunity analysis, I don't think we're asking what a reasonable juror could find. Because, again, I think we're talking about a question of law, and it's for the court to decide, not the jury. And I think that's just absolutely clear post-saucier. But another thing that I'd like to suggest, another thing that the judge can't do on a motion for directed verdict is he can't weigh his determination of the credibility of the witnesses. Now, that's a different situation. Now, that judge may have seen those witnesses. He may know what he thought. He may have even thought that Diana was telling falsehoods because of the position she was in. She was a part of the community. She had all this kind of stuff. But we have to weigh that out, too, on the way he did it, and then find, according to the standard, that there's immunity. So there's a lot of things that we boil out of this and leave only a few things and then have to come to immunity. That's the worry that I have. And I don't disagree with the court at all on this. I don't think that the court is making credibility findings, and I'm certainly not asking the court to do that. I'm asking the court to consider the objective facts, and I think they add up to probable cause. My worry about it is the kind of decision he wrote. The kind of decision he wrote seemed to be a weighing decision, where he weighed credibility, he weighed witnesses, he weighed all that kind of stuff. And if so, it was an abuse of discretion to make that decision because it can't be a weight. But I would bring this court back to the standard of review on the qualified immunity question, which is de novo. And you look at the facts. You don't weigh the credibility of the witnesses. You ask yourself whether these facts add up to probable cause. And if you don't think they do, you have to go on to the next question, looking at these objective facts, and ask whether a reasonable police officer would have believed that there was a fair probability, because that's the standard, to believe this guy was the third guy in the car. And I think there was. There was one other evidentiary issue where the judge refused to exclude the testimony that the officer felt he had probable cause. That's not the standard, and they shouldn't be allowed to testify to that, should they? Probably not, Your Honor. Again, because it's a question of law. And I would also say the case that counsel cited in his 28J letter, the Edgerly case, I think it supports my position that this is a question of law. Thank you. Thank you. Thank you for your argument. Just for some rebuttal. I remember that what Judge Klosner said in his written opinion was no, I take it back. I think this was in the further excerpts of record, orally from the bench. He said, you know, if I had let this case go to the jury and they had found for the plaintiffs and you made the motion judgment as a matter of law after the verdict, I would still grant the motion. The reason Edgerly should be followed and should control your considerations is because looking at the record evidence, probable cause was lacking. It's clear you can't fabricate evidence. It's clear you can't arrest somebody without probable cause. Those are the two constitutional standards that are clearly in place. And no reasonable officer would have manufactured evidence against Raymond Torres where that identification, I dispute the characterization of it as tentative. It wasn't even that. It was comparative. He looked, she was trying to be helpful. She looks more like, sorry, number six, looks more like the person who was in the back seat of my car than the other faces that you've presented to me. Nothing more than that. And the detectives had previously said in exactly the same situation that they would not, they didn't even pursue a further investigation of someone that she identified in only that way. And Detective Roberts said. Raymond Torres testified. Briefly, but not with respect to the issue of probable cause because he was not interviewed by the detectives before he was arrested. So since the probable cause determination cuts off at the moment of arrest, I can't remember that he testified at all. But if he did, it would be that there was no conversation. He was taken to the car, arrested, and taken to the station. So he didn't testify or did testify? He didn't. I remember that his mother testified briefly, and I can't remember if he did or not. She wasn't there, of course. Pardon me? She wasn't there. She was there. She was watching this happen when he came out. She was? Yes. That's why there's a bystander liability cause of action on her behalf. She was there when the shooting took place? No. She was there when they came to, after the Diana identification fiasco, they went straight to his house and asked for his mother to call him out. I'm talking about the trial. She was there at the trial. She was there when he was arrested. And he didn't testify? My memory of that, I'm sorry, would be in the record. But if he did testify, it would be. I wasn't there. I wasn't there. I don't think he put up a denial. That wasn't the idea. There wasn't any interview. The most he could have testified to was I came out, I didn't run away, they walked me to the car and said they wanted to ask me about something at the station. I willingly went. And that's all that happened. And I see that my time is up. I don't remember whether he did testify. I'm sorry. I don't remember if he testified. Of course, he didn't. He was never prosecuted. The DA dropped the case after he spent five and a half months in jail. He didn't testify. I'm talking about him being a plaintiff in this case. I believe that his testimony, for the most part, I remember my focus, only had to do with damages because everything that happened to him after he was arrested, he could have testified to that. He didn't have any precipient knowledge of anything prior to the time the officers came to the house and arrested him. So I'm sorry I can't remember, but it would be in the record. And it would be three or five pages if it's that. Thank you, Counsel. Thank you, Your Honor. Case 0655817, Torres v. The City of Los Angeles is hereby submitted. Thank you, Counsel, for your argument. Case 0655937, Rick McEnterprises, Inc. v. Equilon Enterprises, LLC.
judges: Fletcher, Smith, King